### WARD v. ROGERS BROS. CO.

(Circuit Court of Appeals, Ninth Circuit. March 5, 1917.)

### No. 2775.

1. PATENTS ⊜328—INFRINGEMENT—PROCESS OF MAKING ROADWAYS.
   The Ward patent, No. 991,043, for a process of making roadways, which consists in atomizing oil in contact with the air before it falls on the surface of the roadway, construed, and *held* not infringed.

2. PATENTS ⊜157(1)—CONSTRUCTION—EXCLUDING PRIOR DEVICES.
   A patentee is to be held to that construction of his patent which does not include anything disclosed by prior patents or devices in public use, or known to the public.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229, 230.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

---

Suit in equity by Joseph E. Ward against the Rogers Bros. Company. Decree for defendant, and complainant appeals. Affirmed.

Frederick S. Lyon, of Los Angeles, Cal., for appellant.

Hartley Shaw, of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Appeal from a decree of the District Court for the Southern District of California, Southern Division, dismissing the complaint in an action for infringement based upon letters patent 991043, granted to Joseph E. Ward, May 2, 1911, for a process of making roadways. The defendant set up noninfringement and that the patent was void by anticipation.

[1] Plaintiff, in his specification, stated that the main object of his invention was "to reduce to a minimum the amount of oil required in making the roadway." In describing his process he said:

"The process consists essentially in applying the oil to the road surface in a condition of suspension in the air in such manner that the oil as it settles into contact with the road surface permeates the road surface by reason of its fine state of division, forming a coating over each solid particle in the road surface, so that in the stirring and compression of the road surface by the ordinary traffic these solid particles will be compacted together and will be caused to form a waterproof compact mass, the oil acting as a binder."

The claims of the patent are as follows:

"1. The process of making a roadway, which consists in atomizing oil in contact with air, in such manner that the oil tends to remain suspended in the air for an appreciable time, bringing the atomized oil and air into contact with a porous road surface, causing the oil to permeate the porous road surface while still in atomized condition, and causing the atomized oil to be deposited on the material of the road surface while said material is agitated and partly suspended.

"2. The process of making a roadway which consists in atomizing oil in contact with air, maintaining the oil in atomized condition and suspended in the air an appreciable time prior to bringing it into contact with a porous road surface, causing the deposit of atomized oil on the road surface in a thin layer of atomized oil particles, thereby maintaining the maximum surface of exposure of the oil to contact with the air and with the material of the roadway for hardening of the oil and binding the same to the road material by oxidation."

It will be observed that the first claim calls for: Atomizing oil in contact with air in such manner that the oil tends to remain suspended in the air for an appreciable time; pressing the atomized oil and air into contact with a porous road surface; causing the oil to permeate the porous road surface while still in the atomized condition; causing the atomized oil to be discharged on the material of the road surface while such material is agitated and partly suspended.

In the second claim the call is for: Atomizing oil in contact with air; maintaining the oil in atomized condition and suspended an appreciable time; bringing this oil into contact with a porous road surface; causing the deposit of atomized oil on the road surface in a thin layer of atomized oil particles; maintaining the maximum surface of exposure of the oil to contact with the air and the material

of the roadway for hardening the oil and binding the same to the road material by oxidation.

In both claims there is a restricted form whereby an essential element of the process is the atomizing of oil in contact with air and that the oil be applied in such atomized condition to a porous road surface. The atomizing of the oil is described as follows:

"The oil is forced by the pump 8 through the atomizing nozzles under sufficient pressure to secure atomization, and the openings for the atomizing nozzles are sufficiently contracted to insure that, as the oil issues under such pressure, it will on encountering the air be broken up into such fine particles that it tends to remain suspended in the air for an appreciable length of time, forming a mist or mixture of air and minute particles of oil. This operation of finely dividing the oil to form a mixture with air is well understood under the term 'atomization' and the function of the operation in my process is to render the oil capable of permeation or diffusion into and between the solid particles and surface of the roadway, the mixture of air and atomized oil having in this respect the properties of a gas as distinct from those of a liquid or solid."

The inventor has thus made clear that his process is a cloud or oily mist, in contradistinction to the application of oil to the road surface in an unbroken stream or sheet. Again, he says in his specification:

"Where oil is deposited on the roadway by means of the ordinary sprinkling nozzles, or by means of forcing the oil in a solid stream into violent contact with the surface of the roadway, the oil tends to collect in pools and has to be violently forced into the interstices of the roadway by mechanical action, for the reason that roadway surface dust particles, etc., have no capillary attraction for the oil, but rather tend to repel the same until they have been actually wetted with it; but, by reducing the oil to an atomized condition and suspending it in the air, it is caused to enter the porous surface of the roadway and to penetrate between the dust particles by a process of diffusion."

[2] Plaintiff is to be held to a construction of his patent whereby nothing shall be included which is disclosed by prior patents of devices prevailing in public use or known to the public. Hubbell v. United States, 179 U. S. 77, 21 Sup. Ct. 24, 45 L. Ed. 95. This being the correct rule, the patent does not include the application of oil in a sheet or film, because it appears that in 1900 there was a device, known as the Studebaker sprinkler, commonly used to apply oil to roads. In the Studebaker sprinkler the oil was discharged by the pressure of gravity from the tank in which the oil was carried, there being a cylindrical head connected with the oil supply. There was a transverse slot in the head, capable of being reduced to regulate the quantity of oil supplied. The oil was discharged in a fan-shaped sheet, which spread out until the oil struck the ground; the slot being carried about two feet above the ground. It appears, also, that before plaintiff invented there was another machine in use by which oil was discharged on a road through a series of pipes flattened at the end, so as to discharge the oil in a fan shape; and still another device was used about 1906 or 1907, wherein the oil was discharged from a pipe into a pan, so that the oil ran off the edge of the pan and fell on the road in a thin sheet.

It is true that in the devices just referred to there was much less pressure than is to be found in the plaintiff's machine, and that as

a consequence the oil was not forced to the ground with so much velocity. Obviously, therefore, there was greater time for the effect of the air to operate than where the oil was forced to the ground with velocity. The atomization claimed by the plaintiff herein is limited to that which makes a mist or mixture of air and minute particles of oil. An expert witness for the plaintiff said that he thought that the term "suspended in the air," as used in the patent, meant this:

In the passage of the oil from the nozzle through the air, "in one sense it is suspended in the air the same as any body moving in the air, a cannon ball or a bullet."

The witness also said that the oil, passing from the nozzles down, interfered with the air in passing through it, with a tendency to cut the particles of oil with the air, and when the oil struck the ground with the force given by the pump it penetrated the dust or dirt of the surface and mixed with the dust, and the oil carried down was held in those spaces, and to an extent mixed or suspended with the air. His theory was that when the air was brought into contact with the particles of oil, so that the oil absorbed the air and operated to oxidize, the effect was to thicken the film that was put on the road. Witness thought that the defendant's machines in operation produced the same effect; that they gave the same fan shape and produced the same effect on the road.

Plaintiff argues that Ward conceived the idea to force the oil against and into the particles of the road surface, as well as to divide up the oil into an atomized or broken condition, so that the particles of oil carried air with them. The argument is that the drawings of the Ward patent show a forcible projection downward of the oil, and that the forcible projection downward of the oil under pressure prohibits any suspension of the oil in the same sense that the oil particles "floated in the air." "Suspended in the air," appellant says, means that the particles of oil shall be suspended in the air when projected in between the particles of the road surface, so that the oxidation will be rapid and the natural tendency of the road particles to repel the oil overcome. We are asked to give such chemical sense interpretation to the term "suspension in air" as will accord with such chemical action as described by plaintiff's witnesses.

The trouble with this reasoning is that the patent makes no reference to suspension after the mist reaches the road surface, but does refer to the oil in suspension in the air settling into contact with the road surface. But the words which call for atomizing oil in such manner that the oil tends to remain suspended in the air for an appreciable time limit the claim of plaintiff to the atomizing and mixing process, and not to the broader one of applying to oil pressure in addition to the force of gravity. The claims do not include pressure other than that which is sufficient to create the mist or atomization.

In the drawing attached to the patent, Fig. 1 shows a spray of oil projected in horizontal direction, and Fig. 2 does not disclose whether the oil is being forced downward or is settling down by its own weight. Pressure of oil under pump enables uniformity of application to be had; but, as we read plaintiff's patent, no process of that

sort is covered by it. We do not·believe that the plaintiff can take advantage of the claim that the atomized oil is to be "deposited on the material of the road surface while said material is agitated and partly suspended," upon the ground that the oil is to be agitated and partly suspended. The word "material," used in claim 1, means the material of the road surface, and not the oil to be applied.

Nor do we think that the plaintiff can claim that the special discovery of Ward's process has resulted in saving to a large extent the amount of oil used in making a road. Undoubtedly, pressure which can be controlled and regulated as applied to oil resulted in a revolution of the mode of applying oil to roads, and it is shown that after several devices for utilizing pressure were put upon the market a great change occurred. But, as stated, pressure under which the oil is applied is not part of Ward's patented process.

Turning now to the defendant's process, we find that the machine employed has a row of nozzles six to eight inches above the ground. In each nozzle there is a slot, approximately one-eighth inch wide by an inch long, through which oil is forced by pump pressure in a tank. The nozzles are set so close to the ground that they may obtain an unbroken sheet of oil to hit the road and thus secure uniform application of the oil. The great weight of testimony is that the oil from the defendant's machine is discharged in a fan-shaped stream, striking the road in a practically solid sheet, becoming thinner as it approaches the earth, and that between the time that the oil leaves the machine and hits the ground it does not atomize, at least to any appreciable extent; nor is any of the oil suspended in the air in mist, other than such a steam as may come from hot oil striking the air and down on a road. The object of the machine in use by the defendant is to get a uniform coat of oil, and not to atomize. It is to effect this object that application is had in a thin sheet as described, and the reason for setting the nozzles so low is to insure application in a thin sheet or film. There is some evidence introduced by the plaintiff tending to show that the oil from the defendant's machine is atomized, but the finding of the District Court that it is not is thoroughly sustained by the evidence.

Our conclusion is that plaintiff has failed to prove infringement, and that his bill was properly dismissed on that ground.

Affirmed.