## WARD v. FINLEY METHOD CO.

(District Court, S. D. Texas, at Houston. July 31, 1919.)

### No. 94.

1. PATENTS ⬥⇒323—SCOPE OF DECISION—VALIDITY OF PATENT.

In view of the finding of noninfringement, neither the validity nor the invalidity of the Ward patent, No. 991,043, is declared.

2. PATENTS ⬥⇒168(2)—CONSTRUCTION OF CLAIMS—REJECTION IN PATENT OFFICE.

The patentee having originally sought broader claims, which were rejected in the Patent Office, and having acquiesced in such rejection by withdrawing such claims and substituting a narrower claim, cannot be allowed to insist upon such construction of the claim actually allowed as to embrace in it the claims previously rejected.

3. PATENTS ⬥⇒328—INFRINGEMENT.

The Ward patent, No. 991,043, for spraying atomized oil on roads, *held* not infringed by the process used by the Finley Method Company.

4. PATENTS ⬥⇒229—INFRINGEMENT—WHAT CONSTITUTES.

While the complainant has established that the defendant is employing in the treating of road surfaces the same process which complainant himself employs, this cannot avail complainant, because neither complainant nor defendant are employing the process described and limited in complainant's patent claim. The significant feature of the Ward process, which induced the allowance of patent after the application had been twice rejected, was the claim that Ward had designed a method by which a union of oil and road material could be effected while both were in a state of agitation and partial suspension, and that this coalesced body would settle and form a compact and durable road surface immediately available to traffic, while it is equally clear from the proof that no such union was formed and no such result achieved.

In Equity. Suit by Joseph E. Ward against the Finley Method Company. Bill dismissed.

Andrews, Streetman, Logue & Mobley, and Hardway & Cathey, all of Houston, Tex., for complainant.

Pennie, Goldsborough & O'Neill, of Washington, D. C., Anderson, Rountree & Crenshaw, of Atlanta, Ga., and Moody & Boyles, of Houston, Tex., for defendant.

HUTCHESON, District Judge. This is a suit in equity by Joseph E. Ward against Finley Method Company for injunction and accounting; the complainant asserting a process patent and the infringement of it by defendant. The defenses set up in the answer are two—noninfringement, and that the Ward patent was void, first, because of anticipation; second, that for the purpose of deceiving the public the description and specification filed by the patentee in the Patent Office was made to contain less than the whole truth relative to his invention or discovery, or more than is necessary to produce the desired effect.

[1] As the defense of noninfringement will be sustained, it is unnecessary for me to discuss the defense of invalidity further than to say I do not find any basis for the claim that there was any deception prac-

ticed by the patentee, and that, in view of the narrow scope which I think the patent claim is entitled to, I do not believe it is void by anticipation.

[2] Indeed, it is my view that the claims of the patent as allowed have been drawn with such nice and meticulous care as that they present a patent claim, not only not anticipated by the prior art, but one whose processes as defined are not now being followed in the art. Plaintiff, in his specification, stated that the main object of his invention was "to reduce to a minimum the amount of oil required in making the roadway." In describing his process he said:

"The process consists essentially in applying the oil to the road surface in a condition of suspension in the air in such manner that the oil as it settles into contact with the road surface permeates the road surface by reason of its fine state of division, forming a coating over each solid particle in the road surface, so that in the stirring and compression of the road surface by the ordinary traffic these solid particles will be compacted together, and will be caused to form a waterproof compact mass; the oil acting as a binder."

The claims of the patent are as follows:

"1. The process of making a roadway, which consists in atomizing oil in contact with air, in such manner that the oil tends to remain suspended in the air for an appreciable time, bringing the atomized oil and air into contact with a porous road surface, causing the oil to permeate the porous road surface while still in atomized condition, and causing the atomized oil to be deposited on the material of the road surface while said material is agitated and partly suspended.

"2. The process of making a roadway which consists in atomizing oil in contact with air, maintaining the oil in atomized condition and suspended in the air an appreciable time prior to bringing it into contact with a porous road surface, causing the deposit of atomized oil on the road surface in a thin layer of atomized oil particles, thereby maintaining the maximum surface of exposure of the oil to contact with the air and with the material of the roadway for hardening of the oil and binding the same to the road material by oxidation."

It will be observed that the first claim calls for atomizing oil in contact with air in such manner that the oil tends to remain suspended in the air for an appreciable time; bringing the atomized oil and air into contact with a porous road surface; causing the oil to permeate the porous road surface while still in the atomized condition; causing the atomized oil to be deposited on the material of the road surface while such material is agitated and partly suspended.

In the second claim the call is for atomizing oil in contact with air; maintaining the oil in atomized condition and suspended an appreciable time prior to bringing this oil into contact with a porous road surface; causing the deposit of atomized oil on the road surface in a thin layer of atomized oil particles; maintaining the maximum surface of exposure of the oil to contact with the air and the material of the roadway for hardening the oil, and binding the same to the road material by oxidation.

In both claims there is a restricted form whereby an essential element of the process is the atomizing of oil in contact with air and that the oil be applied in such atomized condition to a porous road surface. The atomizing of the oil is described as follows:

"The oil is forced by the pump 8 through the atomizing nozzles under sufficient pressure to secure atomization, and the openings for the atomizing nozzles are sufficiently contracted to insure that, as the oil issues under such pressure, it will, on encountering the air, be broken up into such fine particles that it tends to remain suspended in the air for an appreciable length of time, forming a mist or mixture of air and minute particles of oil. This operation of finely dividing the oil to form a mixture with air is well understood under the term 'atomization,' and the function of the operation in my process is to render the oil capable of permeation or diffusion into and between the solid particles and surface of the roadway; the mixture of air and atomized oil having in this respect the properties of a gas as distinct from those of a liquid or solid."

The inventor has thus made clear that his process is a cloud or oily mist, in contradistinction to the application of oil to the road surface in an unbroken stream or sheet. Again, he says in his specification:

"Where oil is deposited on the roadway by means of the ordinary sprinkling nozzles, or by means of forcing the oil in a solid stream into violent contact with the surface of the roadway, the oil tends to collect in pools, and has to be violently forced into the interstices of the roadway by mechanical action, for the reason that roadway surface dust particles, etc., have no capillary attraction for the oil, but rather tend to repel the same until they have been actually wetted with it; but, by reducing the oil to an atomized condition and suspending it in the air, it is caused to enter the porous surface of the roadway and to penetrate between the dust particles by a process of diffusion."

This patent to Ward was only allowed after it had been twice rejected, and after application had been amended by canceling claim 1, by amending claim 2, by inserting after the word "air," occurring at the end of line 1 of claim of the patent the following: "In such manner that the oil tends to remain suspended in the air for an appreciable time"—and by inserting after the word "surface," occurring in the next to the last line of claim 1 of the patent, "while said material is agitated and partly suspended." Claim 3 of the application, which became claim 2 of the patent, as amended by canceling the word "while," which occurred after the word "condition," line 3 of claim 2 of the patent, and substituting "and suspended in the air an appreciable time prior to," and by the same amendment the words "and porous" were inserted before "road surface," as occurring in line 6 of claim 2 of the patent.

Such, then, being the history of the Ward patent, and of its issue, it is plain that the patent in controversy here was obtained under circumstances which make fully applicable the language of the Supreme Court of the United States in Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 Sup. Ct. 28, 37 L. Ed. 989:

"Having originally sought broader claims, which were rejected, and having acquiesced in such rejection, and having withdrawn such claims and substituted therefor this narrower claim, * * * neither the patentee, nor his assignees, can be allowed under the authorities to insist upon such construction of the allowed claim as would cover what had been previously rejected."

This principle as thus expressed has received repeated affirmations in the decisions. See Rembert Roller Compress Co. v. American Cot-

ton Co. (C. C. A. 5th Cir.) 129 Fed. 355, 64 C. C. A. 25; Ward v. Rogers Brothers Co., 241 Fed. 257, 154 C. C. A. 177 (Ninth Circuit), in which case this very patent in suit was construed and defined; and in the Second Circuit in the late case of Spalding & Bros. v. Wanamaker, 256 Fed. 530, —— C. C. A. ——, in which latter case Judge Learned Hand, speaking for the court, says:

"The successive rejections of this claim necessarily involve the rejection of the construction which the plaintiff seeks to put upon the patent at the present time—or at least, so it seems to us—and *concludes it by estoppel from the interpretation which it now seeks to put upon those claims which the patentee eventually got.*" (Italics mine.)

[3, 4] I have no doubt, from the evidence, that both the complainant and the defendant are employing substantially the same process in the actual treating of road surfaces; but the case does not turn upon the actual process which the parties are employing, but upon whether the process employed by the defendant is the same as that described in the patent to the complainant. And while, as I have said, I have no doubt that complainant and defendant are employing substantially the same process, I have equally no doubt that neither of them are employing the process described and limited in the patent claims.

It is very clear that the significant feature of the Ward process, which appealed to the Patent Examiner and induced him to allow the patent after the application had been twice rejected, was the claim that Ward had designed a method by which a union of oil and road material could be effected while both were in a state of agitation and partial suspension, and that this coalesced body would settle and form a compact and durable road surface immediately available to traffic. And it is equally evident, from the proof before me, that no such union is formed, and no such result achieved. The process in actual use by complainant and defendant consists in both cases of finely dividing the oil, so that it may be distributed over the road surface in a most efficient way, and while it may be in a purely physical sense that there is some suspension of the oil, and that some of the dust on the road is raised, in a practical sense, from the standpoint of making roads, the suspension in the air does not occur, nor is the union of the oil with the roadbed in any sense made, while the material of the road surface is agitated and partly suspended. In other words, this case presents an instance of such verbal nicety of definition before the Patent Examiner as that the process described almost reaches the vanishing point of practical common sense, while before this court such liberality in the use of terms is employed as to embrace in complainant's process practically every effective method of finely dividing the bitumen, so as to place it on the roadbed with the best results.

Complainant therefore finds himself before me in this dilemma: Either his process must be restricted to the verbal content of his claims as allowed, in which event it must be held the defendant has not infringed the patent; or complainant's claims must be judged, not by his patent document, but by the operation of his own machine, in which event it must be held that his process has been anticipated

by the prior art. While, therefore, it is the view of this court that the complainant's case goes out on the first horn of the dilemma, if I should be in that incorrect, his case will not be bettered, because the broad construction claimed by him puts him clearly within the prior art.

It follows, therefore, that complainant's bill should be dismissed, with costs; and a decree so ordering will be entered.