## NYE & NISSEN v. KASSER EGG PROCESS CO.

### No. 8416.

### Circuit Court of Appeals, Ninth Circuit.

### April 26, 1938.

Arlington C. White, of San Francisco, Cal., for appellant.

George B. White, of San Francisco, Cal., for appellee.

Before WILBUR, DENMAN, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is a suit brought by appellee charging infringement of certain claims in two different patents issued to Morris Kasser covering machines designed for handling eggs and for processing them by cleaning and coating them with mineral oil preparatory for shipment, or cold storage. The eggs are delivered to a processing machine in crates with two compartments, each containing five fillers with 36 eggs in each.

The problem presented is the removal from the crate of each filler as a unit, the treatment of the eggs, and the return of the eggs to the filler for crating, with a minimum amount of handling. To this end Kasser, in his first patent in suit, No. 1,489,944, developed and patented a machine which received the layer of eggs from the filler in a square basket or tray containing a receptacle for each egg, 36 in all, arranged in the same manner as in the filler. These eggs are moved through the processing baths in the basket, or tray,

and must be removed therefrom for replacement in the crate.

Claims 12, 14, 15, 28, and 29 of the first patent in suit are limited to a conveyor, a basket carried on the conveyor, and means for releasing the eggs from the basket. Claims 12, 14, and 28 provide that the means for releasing the eggs from the basket are actuated by the movement of the conveyor. Claim 29 provides for the basket and conveyor and "means for releasing the eggs from the basket while the conveyor is in motion."[1]

The basket is connected with two sprocket chains (the conveyor), one on either side of it, and forms a part of the conveyor used in the machine, although removable therefrom. The drawings of this patent show as part of the basket a plate with 36 apertures so arranged that they may be enlarged to permit the eggs to drop through a chute and into a filler placed immediately below. The eggs are released when the part of the traveling basket below the plate containing the eggs is moved with relation thereto by coming in contact with a stationary cam. The basket is so arranged that the upward movement of this lower part of the basket tilts the segments of the plate holding the eggs, thus enlarging the openings and permitting the eggs to fall through into the filler placed below.

Claims 1 and 8 of the second patent in suit, No. 1,798,608, cover an improved form of basket for use in an egg processing machine.[2] This form of basket contains an upper plate with 36 openings for the reception of eggs having metal fingers extending downward to support the eggs. Below this there is a series of six parallel metal strips attached at each end to a crossbar so arranged that when these crossbars are moved upward, or the top plate is moved downward, the six parallel strips enter the bottom of the sockets containing the eggs, contact the eggs, and press them upward until the strips reach the plane of the top of the upper plate, thus completely removing the eggs from the sockets. In the operation of this basket a filler is placed directly over the upper plate and that plate is pressed down so that as the bottom of the eggs contact the cross strips they are forced upward into the filler. When the operation is complete the filler can be slid off the upper plate of the basket. In the preferential device disclosed in the patent the basket has a square table or shelf of the same size as the basket, or filler, attached at the forward end of the moving basket by a hinge connection. The eggs are slid upon this table after being ejected from their sockets into the filler and the table, with the filler, is thrust into a waiting egg crate as the sprocket chains advance. The reverse movement of the sprocket chains, as they turn about the sprocket wheels, withdraws the table from the crate, leaving the egg filler therein. The patent does not disclose the manner of handling the eggs after they are slid from the top of a basket which is not equipped with the hinged table.

---

[1] Claim 12. "In a machine of the character described, a conveyor, an egg-carrying basket on said conveyor, means for releasing the eggs from the basket, and means operative by the movement of the conveyer for operating said releasing means."

Claim 14. "In a machine of the character described, a conveyor, an egg-carrying basket on said conveyor, and means actuated by the movement of the conveyor for releasing the eggs from said basket."

Claim 15. "In a machine of the character described, a conveyor, a basket carried by said conveyor, movable members on said basket for holding the eggs, and means for moving said members to release the eggs from the basket."

Claim 28. "In a machine of the character described, a moving conveyor, an egg carrier carried by said conveyor, means for releasing the eggs from the carrier, and means responsive to the movement of the carrier to a definite position for operating said releasing means."

Claim 29. "In a machine of the character described, a continuously movable conveyor, a basket adapted to carry a plurality of eggs carried by said conveyor, and means for releasing the eggs from the basket while the conveyor is in motion."

[2] Claim 1. "In an egg tray, a top and a bottom portion, the top portion having egg receiving recesses, and the bottom portion being arranged to engage the bottom of the eggs to free them from the recesses, said top and bottom portions being relatively movable, and means connecting the two portions while permitting the relative movement."

Claim 8. "In an egg tray, means providing a series of apertures in which eggs can be held, and also providing rests below the spaces for the eggs, and means whereby the eggs can be urged to be entirely above the edges of the aperture."

The appellant uses an alleged infringing tray in its egg processing machine which, like the baskets in the patents in suit, is attached to two parallel sprocket chains which pass through the processing baths to the point of removal. The appellant's basket contains an upper and lower plate, the upper plate perforated with 36 holes so arranged that the bases of the eggs are supported in these openings after the filler is removed. In order to remove the processed eggs from the basket the appellant's machine is arranged so that as the baskets move forward they pass over a wedge-shaped cam which lifts the lower plate of the basket against the bottom of the eggs and forces them upward into a filler placed over the eggs by the operator. The filler with the 36 eggs is then lifted by an operator and removed from the basket into a crate by the insertion of a well-known form of egg fork containing seven diamond shaped prongs, five prongs being shoved between the rows of eggs, the other two passing on the outer sides of the outer layers of eggs. The partial lifting of the eggs by the cam device from their sockets in the upper plate is desirable in order that the fork may be easily inserted below the largest diameter of the eggs and thus facilitate their handling.

It should be noted that there is testimony to the effect that in appellant's device the eggs are never free from the recesses of the upper plate because in actual operation the under plate stops at least one-eighth of an inch below the lower surface of the upper plate (which is about one-eighth of an inch thick) and therefore about a quarter of an inch below the upper surface. Thus if the operator fails to superimpose the pasteboard filler or to remove the eggs when the egg basket passes beyond the cam which raises the lower plate, the eggs return to their former position in the basket and pass on uninjured.

The trial court held the claims of the two patents sued upon to be valid and infringed by the appellant's device. The appellant denied infringement and attacked the validity of the patents in suit, claiming that they were without novelty and anticipated by the prior art.

### Infringement of Patent No. 1,489,944.

To determine whether or not the first patent in suit is to be given a broad or narrow range of equivalents some consideration of the prior art is necessary.

The first Kasser patent was granted April 8, 1924, on an application filed April 24, 1920. On February 9, 1915, Victor Clairemont was granted patent No. 1,-127,733 upon an application filed January 14, 1914, for an egg processing machine adapted to treat eggs in baskets containing 36 eggs. In that machine, the baskets are carried on a conveyor from the original crate, through the processing fluids, and then returned for unloading. At the unloading station, an operator places an empty cardboard filler covered by a metal plate over the eggs contained in the basket. The eggs are emptied into the filler when the chains pass around the sprocket wheels to return to the filling station. It is apparent that the machine disclosed is very similar to the combination claimed in the first patent in suit. The disclosures of this Clairemont patent read upon the broad claims of the Kasser patent, particularly claims 12 and 29, although the means of transferring the eggs from the basket to the filler in the former patent are quite different from those disclosed by the specifications and drawing of the first Kasser patent in suit.

On a patent application filed April 10, 1915, Clairemont secured a second patent, No. 1,224,710, issued May 1, 1917, for an egg processing machine wherein the eggs were removed from the crate in fillers containing 36 eggs passed through the machine, and ultimately deposited in a filler in a crate. In this machine the eggs were carried in baskets attached to sprocket chains through the processing fluids. These baskets, however, had no bottom, but the eggs therein rested upon a series of parallel wires along which the basket was slid. After the baskets in this device passed through the processing fluids and reached the end of the wires supporting them, they were met by fillers carried by a movable belt underneath, the arrival of which was synchronized with that of the moving egg baskets so that the fillers reached the end of the wires at the same time as the baskets; thus the eggs dropped in rows of six at a time into the filler which, when completely filled, moved forward on the belt to the operator who removed the filler into the crate.

The claims of the first patent also read on this second device of Clairemont, particularly claim 29.

It will be observed that this second Clairemont machine utilizes the gravitational pull to drop the eggs from the compartments of the basket to the compartments of the filler. This is accomplished by moving the basket beyond the wires which during its progress through the machine constitute the bottom of the basket.

Kasser's machine dropped the eggs by movement of the parts which constituted the bottom of the basket. In this connection it should be noted that the scheme of dropping eggs out of the bottom of a carrier containing compartments and thus releasing the eggs into a filler was embodied also in a handling tray shown in patent No. 1,110,874 granted September 15, 1914, to F. C. Brake, upon an application filed May 26, 1913.

In that patent there is disclosed an egg holder with a vertical handle and a pivoted lever attached to a bar so adjusted that by moving the lever the bar may be swung downward and backward in such fashion as to open a series of six slats each of which form the bottom of compartments containing six eggs which have been placed therein for the purpose of candling. By this device, the eggs may be examined and the holder then set directly over a filler in an egg case, the lever released and the eggs permitted to drop into the filler without further handling.

An egg-lifting device whereby 36 eggs could be released at one time directly into a filler in a crate is also disclosed in patent No. 879,801, granted February 18, 1908, to C. F. Swanson, upon an application filed July 16, 1907. This egg lifter was designed to be used "for lifting eggs in quantity from a crate or the like, disposing the eggs while in the lifter for inspection in a tester device, and after they are tested returning the eggs in proper order within the crate." The device shows a plate containing 36 sockets for the reception of the eggs. Slender wire loops extending through four small openings in the plate immediately adjoining the large openings are operated to move together or apart to hold or release the egg at the will of the operator by the movement of two handles which when pressed together open the wires and release the eggs. In operation, this egg lifter is placed over the eggs while the handles of the machine are pressed together so that the wire loops embrace the eggs. When the handles are released, the wires grasp the eggs and thus secured to the lifter they are moved for inspection. The eggs may be then returned to a filler by placing the egg lifter over the filler and pressing the handles together which will release the eggs.

From a consideration of the patents just discussed, it is clear that the egg releasing means in a "basket," or "tray," or "handler," as it is variously designated, used in the first Kasser patent was not new, but was a part of the prior art. It is equally clear that once the idea was conceived, it would require no more than mechanical skill to adapt the egg-carrying device disclosed by either the Swanson and Brake patents to work automatically on a conveyor. This conclusion is in accordance with the testimony of Harry Murray, witness for appellant. It is of course true that the fact that the elements of a combination are old does not negative invention. But where, as here, the prior state of the art shows not only that the elements of a patented combination are not new but that the idea of a patent is embraced in prior patents designed to do the same work in a similar manner (such as the patents to Clairemont in the case at bar), such patent should be narrowly, not broadly, construed. McCormick v. Talcott, 20 How. 402, 15 L.Ed. 930; Chicago & N. W. Railway Co. v. Sayles, 97 U.S. 554, 24 L.Ed. 1053; Kokomo Fence Machine Co. v. Kitselman, 189 U.S. 8, 23 S.Ct. 521, 47 L.Ed. 689; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Reinharts, Inc. v. Caterpillar Tractor Co., 9 Cir., 85 F.2d 628. So construed, we conclude that the means disclosed in the alleged infringing device, whereby eggs are forced partially above apertures to facilitate their handling by an egg fork, is not the equivalent of the means disclosed by the first Kasser patent whereby the eggs are completely released from the baskets by the force of gravity when egg retaining "leaves" which support them are moved aside.

### Infringement of Patent No. 1,798,608.

The second Kasser patent in suit was applied for March 29, 1928, and granted March 31, 1931. Besides the prior art above referred to, there are other patents that must be considered in determining whether this patent is to be given a broad or narrow construction, and is infringed.

On April 9, 1912, patent No. 1,023,091 was granted H. R. Morris upon an application filed August 10, 1911, which described a device for handling 36 eggs at a time. In the combination disclosed in that patent eggs are placed in a body or frame, which contains apertures for receiving the same. The eggs therein rest upon a lower glass plate. To release the eggs the frame, which is held in position by coiled springs, is depressed and the eggs thus forced above the upper surface. There is thus in substance disclosed an egg-handling device with two parts moving relative to each other to release the eggs. The similarity of this device with the alleged infringing device is apparent.

On October 20, 1924, between the issuance of the two Kasser patents in suit, an application was filed by H. E. Kennedy for an egg processing machine upon which a patent was issued April 5, 1932 (No. 1,852,309), after the issuance of the second Kasser patent in suit, but based upon an application filed four years prior to the application for the latter patent. In the machine disclosed by this patent there is carried a series of plates mounted on sprocket chains, each plate containing 36 apertures for the insertion of eggs which, being of greater diameter than the holes in the plate, are thereby sustained. These eggs are carried through the processing fluids and upon approaching the place designed for their removal a filler is placed over them just before the egg carrying plate reaches a series of six parallel wedge-shaped cams so arranged that as the plate advances over the cams the eggs are gradually shoved up into the superimposed filler by the cams. During loading the fillers are retained in their position, so that they will not be shoved upward by the lifting of the eggs, by means of rollers which are attached to the body of the machine under which the advancing filler passes. Thereafter, removal of the fillers is accomplished by an egg shovel operated by hand. This operation of the machine is thus described by the patent: "When the eggs reach the discharge end of the machine, the operators merely replace the fillers. The eggs are automatically pushed upwardly into the fillers and out of the perforated plates, and they are then transferred from the plates by means of shovels back to the crates, thus eliminating individual handling of each egg at this point."

The claims of the patent refer to this device as "means for raising the eggs upwardly away from the plates," again, as "means for automatically raising the eggs upwardly away from the perforated plates," and again, as "means engaging the eggs during movement of the conveyor and pushing said eggs upwardly through said openings preliminary to removal of the eggs from the trays."

The appellant's device raises the eggs from the basket in the same way, that is, by the use of a wedge-shaped cam. The appellant, however, interposes a plate between the cam and the bottom of the egg so that there is no frictional contact between the bottom of the eggs and the cam. It is clear that the insertion of a plate between the eggs and cam in appellant's device is a minor difference between that device and the device disclosed by the Kennedy patent. It thus appears that Kennedy's patent clearly anticipates Kasser's second patent in so far as such patent would cover either the Kennedy device or the alleged infringing device.

It should also be noted that while the Kennedy patent was pending in the Patent Office, Clairemont, on August 25, 1925, applied for a patent for a grading and candling machine which was issued September 14, 1926 (No. 1,599,553). This machine was so arranged that after grading and candling the eggs, perforations in traveling plates would be refilled with eggs of the proper size, a filler then placed thereover, and the plate advanced along a conveyor toward a wedge-shaped ramp. As the conveyor moved forward over the ramp the eggs were shoved upward by the ramp into the filler; the filler being held in place over the eggs during this process by the weight of two rollers attached movably to the side of the machine. Passing onward the filler was shoved onto a table unconnected with the sprocket chain there to await removal. This unloading device, it will be observed, is practically identical with the Kennedy device, with the exception that in the latter there are six parallel ramps or cams instead of one six times as wide.

■■ The claims of the second patent in suit must be limited so as not to include similar devices disclosed by the prior art. As this court said in Ward v. Rogers Bros. Co., 9 Cir., 241 F. 257, 259: "Plaintiff is to be held to a construction of his patent

whereby nothing shall be included which is disclosed by prior patents of devices prevailing in public use or known to the public." As thus limited, the patent in suit does not cover the appellant's alleged infringing device.

In view of our finding of noninfringement as to all the claims in suit, we withhold a decision on the validity of these claims as limited.

The interlocutory decree is reversed, and the trial court directed to enter a final decree in accordance herewith. Appellant is to have its costs.