D'ARCY SPRING CO. et al. v. MARSHALL VENTILATED MATTRESS CO.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1919.)

No. 3192.

1. PATENTS ⬤⟹328—CONSTRUCTION—VALIDITY.

The Marshall patent, No. 685,160, for a mattress comprising a cover and a plurality of transversely extending strips of material stitched at intervals to form pockets, etc., and spiral springs arranged in such pockets, *held* valid, showing invention.

2. PATENTS ⬤⟹185—DESCRIPTION—SUFFICIENCY.

Though the patentee did not anticipate the use to which the patented article could be and was put, he is entitled to protection for such use, where the adaptability was inherent in the structure shown and described in claims and specifications.

3. PATENTS ⬤⟹178—CLAIMS—LIMITATION.

Where a claim defines an element in terms of its form, material, location, or function, thereby apparently creating an express limitation, and the limitation pertains to the inventive step, rather than to its environment, and imports a substantial function which the patentee considered of importance, forms excluded cannot be considered covered by the patent, under the doctrine of equivalency.

4. PATENTS ⬤⟹328—INSTRUCTION—LIMITATIONS.

The Marshall patent, No. 685,160, for a mattress, comprising a cover and a plurality of transversly extending strips of material stitched at intervals to form pockets, the pocket of one strip alternating with those of adjacent strip, and spiral springs arranged in such pockets, *held* limited therein to that form of arrangement, and not to be infringed by a mattress similarly constructed, where the pockets were arranged with centers equidistant in right-angled directions, so that there was no nesting of the springs.

5. PATENTS ⬤⟹287—INFRINGEMENT—DAMAGES.

The president and general manager of a corporation which infringed a patent is not individually liable for damages and profits on infringement, unless he inflicted the damages or received the profits otherwise than through the usual relations between officer and corporation.

6. PATENTS ⬤⟹290—INFRINGEMENT SUIT—DEFENDANT.

In a suit against a corporation for infringement of patent, the president and general manager, in active control of the corporate affairs, may be made defendant, so that he may be personally bound and enjoined.

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Suit by the Marshall Ventilated Mattress Company against the D'Arcy Spring Company and others. From a decree for complainant, defendants appeal. Decree reversed, in order that new decree may be entered, modified according to the opinion.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Otis A. Earl, of Kalamazoo, Mich., for appellants.

Taylor E. Brown, of Chicago, Ill., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge.    Patent No. 685,160 was issued October 22, 1901, to Marshall, and became the property of appellee, who was plaintiff below.   It disclosed a mattress or other cushion having a suitable cover, and the resilient body of which was composed of a mass of vertical spiral springs; each spring being contained in a cylindrical pocket of fabric closed at the top and bottom, and several of the pockets being fastened together at their sides, so that they constituted a strip or row of pockets.   This was accomplished by taking two strips of fabric of suitable width and imposing one upon the other, or by folding longitudinally upon itself a strip twice as wide, and then stitching transversely at intervals across this double strip.   Thus a row of pockets was created, and, after the springs were inserted therein, the ends were closed by whatever further stitching might be necessary. The single claim is:

"A mattress comprising a cover and a plurality of transversely extending strips of textile material arranged therein and stitched at intervals to form pockets having closed ends, the pockets of one strip alternating with those of the adjacent strip, and spiral springs arranged in said pockets, substantially as described."

The court below found validity and infringement, and the defendants bring this appeal.

[1, 2] We agree with the court below that the patent involves invention and should be sustained.   A strip of fabric, thus transformed into a unitary series of pockets containing springs, was new, and it has proved to have large commercial utility.   Perhaps this utility and extensive use have developed from a method of business not described in the patent or anticipated by the patentee, viz. selling the prepared spring-containing strip as raw material suitable to be made up into a mattress or cushion; but this adaptability was inherent in the structure shown and described, and the patentee's lack of complete prevision is not important.   Goshen Co. v. Bissell Co. (C. C. A. 6) 72 Fed. 67, 74, 19 C. C. A. 13.

[3, 4] We cannot give to the presence in the claim of the element, "a cover," the limiting effect which defendants attribute to it.   The mattress cover shown in the drawing represented only the familiar environment or field provided for the operation of the mass of covered springs which represented the substance of the invention; and any of the varieties of cover found in the defendants' structures (when finished as intended) must be considered within the inventor's meaning, when he referred to a "cover."

The difficult question is presented by the clause of the claim which reads, "the pockets of one strip alternating with those of the adjacent strip."   Obviously, there are two ways in which these rows or strips of pockets may be assembled in order to make a quasi unitary support for a cushion top:   They may be put together aligned, with pocket

centers equidistant in both right-angled directions, or the second row may be moved longitudinally one-half the width of a pocket, and then each pocket will enter partially between two pockets of the first row. In the former case, the rows are wholly distinct from each other and are spaced in both directions the extreme width of the pocket; in the latter case, the pockets of one strip alternate with those of the adjacent strip and the strips have broken joints, or it may be said that the pockets are staggered and nested. The question is whether the finding of infringement should be confined to those structures which have the pockets thus staggered (defendants' first form), or whether those which have the pockets of the first class described (defendants' second form) are so fully the equivalent of the staggered style that they cannot escape. The trial court adopted the latter view.

The rule that an express limitation may not be disregarded and the rule that a form equivalent to a specified form also infringes often seem to come into conflict. There is no fixed formula by which this conflict can be settled, but it must be determined by finding the true meaning of "equivalency" in the case to be decided. In a very fair sense and as to most of the functions involved, it is immaterial whether strips of pockets are arranged in alternate or opposite mutual relation. Considering the scope of the actual invention and of claims which might well have been formulated, there would be little difficulty in finding in defendants' second form the necessary equivalency upon which to predicate infringement, if it were not for the expressly stated requirement about the relative positions of the strips. We assume, as hereafter stated, that this requirement was not inserted under such circumstances as to estop the patentee from asserting his present theory. It follows that the case is to be treated as one of voluntary and unnecessary limitation.

It seems worth while to review briefly some of the controlling or leading cases upon each side of the subject and upon which the parties, respectively, rely. In Winans v. Denmead, 15 How. 341, 14 L. Ed. 717, a claim to the frustrum of a cone was held to include as an equivalent the frustrum of an octagonal pyramid. It is doubtful whether there was so much discrepancy between the letter of the claim and the defendant's form as has been thought, since a cone is a pyramid with an infinite number of sides, or, as recited in the opinion, "a polygon of many sides would be equivalent to a circle"; but, passing by this feature of identity, it is clear that the difference was merely in form, and that, in operation and functions and effect, the two were identical. The difference in form did not stand for anything else, and a rule of equivalency so strict as to exclude from the monopoly one form and include the other would tend to raise doubt as to the existence of any patentable invention.

In Metallic Co. v. Brown (C. C. A. 8) 104 Fed. 345, 352, 43 C. C. A. 568, the claim called for an element located at the side of the horizontal roasting chamber, but the rule of equivalency served to bring within this claim a structure in which this element was underneath the chamber. Here, also, it may be noted that there was not even a literal inconsistency, since the word "side" is often applied to the top

and bottom sides as well as to the horizontal sides; but again there was no function whatever indicated by the location at the horizontal side as distinguished from the location underneath. There was no room to suppose that the inventor could have thought that the location he specified was material to his invention and thus no room to say that he intended to make it material. The conclusion was not to be escaped that the inventor used the term only because it was appropriate for the specific form which happened to be before him.

In Bundy Co. v. Detroit Co., 94 Fed. 524, 538, 36 C. C. A. 375, this court disregarded the superficial distinction between a key which is rotated and one which is pushed longitudinally. Here, again, there was nothing whatever new in the form or motion of the key; the inventor's forward step pertained to another feature of the mechanism and was to be operated equally well by either form of key. It was in effect held that the specific form of claim reference to an element which was not an inherent part of the new step, but only pertained to a working field therefor, would not be permitted to dominate except in the plainest case.

In Schieble Co. v. Clark (C. C. A. 6) 217 Fed. 760, 133 C. C. A. 490, the claim called for a driving shaft in combination with two pairs of running wheels, and the defendant brought the driving shaft into direct relation with one pair of running wheels only; but he had had the other two running wheels upon his structure, and all their functions with relation to the driving shaft were performed by a pair of supplementary and otherwise unnecessary rollers. The case does not go as far as some of the others do in disregarding distinctions plausibly claimed.

In Keystone Co. v. Phœnix Co., 95 U. S. 274, 24 L. Ed. 344, the claim called for "wide and thin drilled eyebars * * * applied on edge." Defendant used round bars, flattened at the ends where eyes were drilled, and (apparently) placed on edge. Though the two forms were equivalent enough in a general way, yet since it appeared that the "wide and thin" form had thereby additional utility, the claim was limited to the form specified.

In White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303, the claim specified a lining of textile fabric; defendant used a lining of paper. The main object of the invention was accomplished just as well by the paper as by the cloth; but the court, in its often-cited "nose of wax" opinion, held that they were not equivalents. The principle seems to be that since cloth and paper are not always equivalent and since cloth has distinctive qualities which the patentee might have considered important, he would not be allowed to escape his express declaration that he claimed cloth only. This court has often applied the same rule.

A recent instance is found in Arnold-Creager Co. v. Barkwill Co., 246 Fed. 441, 158 C. C. A. 505. Here the claim provided that certain elements should be located on the end of the material reservoir, while defendant located them upon the side. This court considered the change sufficient to escape infringement, even though, in a broad sense, there was equivalency. We thought that, by his specification,

the inventor had indicated his intent that the elements should be upon the end and his belief that there was substantial and material advantage in having them so located; and we observed that to transfer these elements to the side would require considerable reorganization of the machine and would entirely do away with certain simplicities of construction and directness of action which the inventor had believed important. Under those circumstances, we thought we could not disregard the distinction which the patentee had adopted.

Two of our decisions are urged upon us—one by each party—as controlling; but we do not so regard either, when applied to a case of voluntary limitation. Vanmannen v. Leonard, 248 Fed. 939, 941, 161 C. C. A. 57, was a case of estoppel by proceedings in the Patent Office. Whether the patentee would have been held so closely to his specified form if his selection had been voluntary and casual, rather than as evidencing the ground upon which he distinguished the reference and secured his patent, need not be considered. The Vrooman-Penhollow Case, 179 Fed. 296, 102 C. C. A. 484, is also rightly to be thought of as presenting the question of estoppel. The patent issued with a requirement that one named roller should be of "much smaller diameter" than another named roller, and the defendant had the two of the same size. This requirement was inserted after a certain reference had been made, but the court thought it did not in fact serve to distinguish from the reference, and that since it could not have been plausibly thought to import differentiation and since the reference was amply distinguished otherwise, and the difference in size had no function whatever, the patentee could not be charged with having represented the relative size of the rollers to be a patentable difference. It was therefore held that there was no estoppel to prevent the patentee from afterwards claiming that the two forms were equivalent. If it had appeared to the court that the "smaller diameter" was—or that the inventor probably thought it was—important to the full accomplishment of his theory of the machine, there would have been a different case presented.

From a review of these and other familiar cases, we think it is safe to deduce the proposition that where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency. Applying this rule, we find that placing the transverse rows of pockets in this alternate nested relation requires the rows to be set about one-fourth closer together than if aligned, and therefore increases the cost of filling the required cushion surface. Certainly this disadvantage would not have been specified, unless it was important. Its distinct utility lies in the fact that a large part of the space which would otherwise

be unoccupied between the upper coils of the springs is filled with similar springs, so that the supporting surface becomes considerably more unitary and the effect is correspondingly smoother and more uniform, and in the further fact that when the springs are thus placed in much closer contact, the pocket is more especially useful in preventing intermeshing of the springs, and in the further fact that when thus placed the spring-containing pockets mutually support each other in their upright position in distinctly greater decree than if they did not have the close-fitting alternate relationship.

We think the conclusion must follow that the expressly stated limitation cannot be overcome by applying the rule of equivalency, and that the patentee intended and understood his monopoly to be confined to a structure in which the springs had the alternate relationship which he specified. We are confirmed in this conclusion as to his intent by what occurred in the Patent Office. He urged upon the Examiner the presence of this limitation as a reason for distinguishing from a reference, the Examiner replied that the distinction did not import patentable novelty, and the subject-matter was thereafter dropped from discussion, yet the limitation was retained until the end; and Marshall, therefore, after the subject had come to his attention, declared his belief that the distinction was important. Though there may not be much real difference between relying upon an existing claim detail to avoid a reference and inserting a new detail for the same purpose, yet it is the latter action which creates the ordinary estoppel, and we assume, without deciding, that the record does not show that technical estoppel which often has been developed in this class of cases.

Plaintiff urges that this limitation pertains not to a mechanical element but only to a matter of location, and, hence, that a more liberal rule of equivalency should be applied. We cannot see that it is doctrinally important whether the element said to be missing in defendants' structure is a mechanical element or any other kind of an element. The matter of location or mutual arrangement may be less often vital than the matter of presence of a mechanical part, but this will be because of the peculiar facts of the case and not because of any general rule. Plaintiff also urges that the claim is sufficiently met if the pockets are capable of alternation, even though not so assembled, and says that the pockets which are aligned in defendants' cushion (second form), as marketed, will, with use, fall into nested position. If this result happens, it is incidental and accidental. Owing to the difference in top area occupied by the springs in the two methods, it is evident that any partial shifting from the aligned to the nested position injures the cushion. This cannot be intended. Marshall's thought that the cushion cover needed that more perfect support given by the nested, as compared with the aligned, form is further shown by his later patent, issued on a copending application, in which he showed and claimed the aligned form, provided with supplementary smaller springs, arranged to fill the openings between the larger ones.

The second form must be held to be noninfringing.

259 F.—16

[5, 6] The individual defendant, D'Arcy, the president and general manager of the corporation, was held personally liable for accounting as well as for injunction. This is complained of here, although it is is not entirely clear that the point was ever brought to the attention of the district judge. It is the rule in this circuit that such individual liability for damages and profits on infringement does not exist unless the officer inflicted the damages or received the profits otherwise than through the usual relations between officer and corporation. McSherry Co. v. Dowagiac Co., 160 Fed. 948, 965, 89 C. C. A. 26. There is neither allegation nor proof of any extraordinary relation in this respect, and the accounting for profits and damages should not have been ordered against D'Arcy. As to the propriety of making such a managing and directing officer as D'Arcy was a defendant in order that he may be personally bound and enjoined, we have already expressed our approval of the view in the First circuit, rather than that in the Seventh. National Co. v. Leland (C. C. A. 1) 94 Fed. 502, 507, 511, 37 C. C. A. 372; Cazier v. Mackie Co. (C. C. A. 7) 138 Fed. 654, 71 C. C. A. 104; Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 Fed. 120, 140, 144 C. C. A. 418. For this purpose and to this extent we consider D'Arcy an "active participant," within the exception specified in Western Co. v. Northern Co. (C. C. A. 6) 135 Fed. 80, 89, 67 C. C. A. 553. If so, he is liable for the costs of the defense which he actively directed. The exemption from costs which we sanctioned in Ohmer Co. v. Ohmer, 238 Fed. 182, 194, 151 C. C. A. 258, had reference to the costs of this court on appeal.

An injunction is now immaterial, the patent having expired. The decree should be modified, by excepting therefrom articles like Plaintiff's Exhibit 17 and by denying D'Arcy's liability to account; in other respects, it should be affirmed.

We do not undertake to consider the extent of damages involved in a cushion in which part of the strips were in alternate relation and part were not. That question has not been argued and cannot be considered as arising on this record.

The decree below is reversed, in order that a new decree may be entered, modified according to this opinion. Appellants will recover costs.