## REPUBLIC IRON & STEEL CO. v. YOUNGSTOWN SHEET & TUBE CO.

### TAYLOR–WILSON MFG. CO. v. SAME.

(Circuit Court of Appeals, Sixth Circuit. April 15, 1921.)

Nos. 3386, 3387.

1. **Appeal and error ⟨key⟩874 (1)—Validity of patent as to which District Court expressed no opinion not open to consideration.**

   Where, in a suit for the infringement of two patents, the court granted the usual interlocutory decree for injunction and accounting on one of the patents, and expressed no opinion as to the other, the validity of the second patent is not open to consideration on an appeal from such interlocutory decree.

2. **Appeal and error ⟨key⟩23—Must notice lack of jurisdiction, though objection not made.**

   The Circuit Court of Appeals must take notice that it has no jurisdiction of the question as to the validity of a patent as to which the District

Court expressed no opinion, though the objection is not made by either party.

**3. Patents ⬤⟶328—No. 1,019,759, for skelp-charging apparatus, held anticipated.**

The Coey patent, No. 1,019,759, for improvements in skelp-charging apparatus, *held* anticipated and invalid.

**4. Patents ⬤⟶165—Unambiguous claims cannot be saved by limitations.**

Limitations, not expressed and not intended, cannot be read into an unambiguous claim in order to save it from anticipation.

**5. Patents ⬤⟶64—Patent valid, and anticipates later patent, though not commercially recognized.**

If a structure is inoperative, the patent upon it is not good, and it does not anticipate a later patent, but mere failure to get commercial recognition, or indeed failure to deserve such recognition until somewhat improved, is not inconsistent with full validity as a patent or full effect as an anticipation.

**6. Patents ⬤⟶35—Failure of patent to receive commercial recognition may indicate that slight improvement was important.**

Where the question is whether the advance shown by a later over an earlier device is of an inventive character, the failure of the earlier device to get recognition in the trade may be persuasive evidence that an apparently slight advance was more important than it seems.

**7. Patents ⬤⟶328—No. 1,012,235, for skelp-charging apparatus, held valid.**

The Bedell patent, No. 1,012,235, for improvements in skelp-charging apparatus, *held* valid.

**8. Patents ⬤⟶36—Failure to attempt to push invention does not show that patentee did not invent anything.**

That a patentee was not sufficiently satisfied that the manufacture of his device would be profitable to impel him to engage in efforts to interest the necessary capital to manufacture and push the invention has no substantial tendency to show that he did not make an invention.

**9. Patents ⬤⟶90(5)—Application is constructive reduction to practice.**

An application for a patent is a constructive reduction to practice.

**10. Patents ⬤⟶328—No. 1,012,235, for furnace-charging apparatus, not infringed.**

The Bedell patent, No. 1,012,235, for furnace-charging apparatus, consisting of the combination with a loading table and plate-elevating mechanism of a rotary magnet wheel, a circular magnetic coil, and means for conducting current to the coil, *held* not infringed by a device in which the plates are fed manually, and not by the use of any mechanism.

**11. Patents ⬤⟶241—One relying on express limitation in patent should be protected against claim of infringement.**

While the inventor of a very substantial advance should receive as broad a measure of protection as the language of his grant justifies, a defendant who has manufactured or used a device in reliance upon an express limitation in a patent voluntarily inserted or accepted by the patentee should be protected in his investment.

**12. Patents ⬤⟶237—Manual handling not equivalent of mechanism for handling.**

Where a patent calls for plate-elevating mechanism for feeding strips of metal to a magnetic wheel, a manual handling of the plate is not the equivalent of the claimed mechanism.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by the Youngstown Sheet & Tube Company against the Republic Iron & Steel Company, in which the Taylor-Wilson Manufacturing

Company filed a cross-suit against the Youngstown Company. From an interlocutory decree for plaintiff, defendant appeals; and from a final decree dismissing the cross-bill, the plaintiff in the cross-suit appeals. Decree in the cross-suit affirmed, and decree in original suit reversed, with instructions.

Robert H. Parkinson, of Chicago, Ill. (Wallace R. Lane, of Chicago, Ill., on the brief), for appellants.

Samuel W. Banning, of Chicago, Ill. (Thomas A. Banning, Thomas A. Banning, Jr., and Ephraim Banning, all of Chicago, Ill., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. These appeals involve an infringement suit by the Youngstown Company, owner of patents to Coey, No. 1,019,759, dated March 12, 1912, and No. 1,130,708, dated March 9, 1915, for improvements in skelp-charging apparatus and a cross-suit by the Taylor-Wilson Company (manufacturer of the device used by the Republic Company, defendant in the first suit), charging infringement of patent to Bedell, No. 1,012,235, dated December 19, 1911, for similar subject-matter. The court below found the first Coey patent valid and infringed, the Bedell patent not infringed, and expressed no opinion as to the second Coey patent. In the original suit, there was the usual interlocutory decree for injunction and accounting upon the first Coey patent; in the cross-suit, there was a final decree dismissing the bill; the defendant in the former and the plaintiff in the latter bring these appeals.

[1, 2] 1. The defendant in the suit on the Coey patents insists that the invalidity of the second patent clearly appears, and that the bill should have been dismissed as to that patent. No such question is open on this appeal. No final decree has been made in that case, and, as to this second patent, the interlocutory decree neither granted nor refused an injunction. Although the objection is not made by either party, we must take notice that we have no jurisdiction of this question.

2. Skelp is a long, narrow strip of sheet metal, which is rolled up and made into a welded tube. In this process, it is first charged into a furnace, where it is heated, and, as it passes out of the furnace, is fed over a former, which develops it into the tubular shape. Owing to the length of the strip, and the difficulties of charging it quickly and perfectly into position in the furnace, which must be as deep as the strip is long, very great labor and skill were required in manual skelp charging, and the necessarily open furnace doors exposed the men to intense heat, and thereby increased the difficulties. There was no method known of automatic or machine charging, except a table, with side guides and having in its surface feeding rollers, or something in the nature of an endless chain, which would take the skelp up to the furnace mouth and push it in; but, for various reasons, this was not thoroughly satisfactory, and had not been generally accepted in place of the hand feed. Bedell departed entirely from anything which had been done in this direction. There was in common use a charging table,

which traveled laterally along a track in front of a battery of furnaces, so that it could be placed in front of each furnace in succession. Upon this table, near its furnace end, Bedell mounted two metallic disks, revolving on a shaft which was parallel to the furnace front and suitably elevated above the table. The edges of these disks were separated from each other by a narrow air space, forming flanges electrically insulated from each other. The wheel formed by the two disks contained coil windings constituting it an armature when in revolution, and so arranged that one flange would represent the positive and the other the negative poles of a magnet. As soon as the skelp fed to the wheel, being wider than the air gap between these poles, came in contact with both, it electrically bridged the gap and was caused magnetically to adhere. In Bedell's form, this contact was made on the lower surface of the charging wheel, which was revolving from below toward the furnace. The amount of magnetic grip could be, and was, so regulated that the skelp would adhere to the charging wheel sufficiently to be driven or rapidly fed into the furnace, and a continuance of the operation would thrust the entire strip into position in the furnace. The exact desired force of this thrust, in order to throw the strip just far enough, and not too far, could be attained by regulating the speed of the wheel and the extent of the magnetic grip. Bedell built a model which was satisfactory to him. He then constructed a full-sized machine, which was tried out practically at the tube mill where he was employed. He then applied for and obtained his patent. His invention, in the words which he selected as (for the purposes of this case) its broadest statement, is shown by claim 6, quoted in the margin.[1]

[3, 4] Coey applied for his first patent December 29, 1911—just after Bedell issued. He showed essentially the same thing as Bedell, excepting as to the means for bringing the skelp plates one by one to the magnetic charging wheel. Bedell took his supply of plates, say 10 at a time, and made them into a pile, lying upon the charging table at a level below the wheel. The wheel, intended to throw forward from underneath, was mounted with the bottom opposite, or a little below, the furnace mouth. It was therefore necessary to lift the skelp plates, one by one, from their resting place to the wheel. Bedell did this by a swinging arm pivoted to the charging wheel and so connected that a roller on the lower end of the arm became a magnet. The operator then turned the arm down until this roller made contact with the upper strip of skelp near its furnace end. He then raised the arm, thus lifting the front end of the skelp strip, until it touched the wheel and was seized and carried forward. Coey revolved his charging wheel in the opposite direction and made the throw from its upper surface. He put his pile of skelp plates upon an elevated portion of the charging table, higher than the wheel, and this elevated portion was provided with a feeding trough, which led to the upper part of the wheel, and

[1] "6. In a furnace-charging apparatus, the combination, with a loading table and plate-elevating mechanism, of a rotary magnet wheel mounted over said table; said wheel comprising a pair of circular disks, a circular magnetic coil disposed between opposing faces of said disks, and means for conducting current to said coil."

with an inclined portion leading from its top down to the feeding trough. The operator took one skelp plate, let it slide by gravity down into the trough and either dropped it at such a point that the front end would contact with the wheel, or else, if it dropped further back, he gave it push enough to make such contact, whereby the strip was seized and thrown into the furnace. Coey's claims, so far as now involved, are typified by claim 1, quoted in the margin.[2] There is no effort by Coey to carry his invention back of Bedell—indeed, it seems probable that the invention was communicated to him by Bedell; but his claims are in very broad form, and, as to three of them, very plainly read upon Bedell, so that the Bedell structure, if later, would infringe them. They cannot be limited so as not to cover Bedell without violating the rule that limitations, not expressed and not intended, cannot be read into an unambiguous claim in order to save it. The fourth claim includes, as an element, a feeding trough; but since this trough was not invented by Coey, but was essentially the form of feed in common use where hand charging was not employed, it was not invention for Coey to substitute it in the Bedell combination, for the special and unusual feeding means which Bedell employed.

[5, 6] The validity of the Coey patent, therefore, plainly stands, and, indeed, is conceded to stand, upon the proposition that the Bedell patent must be disregarded because it never was commercially adopted. We recently had occasion to hold that, upon the question of anticipation of a later patent by an earlier one, as arising in a suit on the later patent, the criterion is the same as upon the question of validity of the earlier patent in a suit brought thereon. Sparks-Withington Co. v. Jay (decided January 14, 1921, 270 Fed. 449). If the structure is inoperative, the patent upon it is not good, and it does not anticipate a later patent; but mere failure to get commercial recognition, or, indeed, failure to deserve that recognition until somewhat improved, is not inconsistent with full validity as a patent or full effect as an anticipation. Telephone Cases, 126 U. S. 1, 536, 8 Sup. Ct. 778, 31 L. Ed. 863; Mergenthaler Co. v. Press Co. (C. C.) Coxe, D. J., 57 Fed. 502, 506; Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 Fed. 120, 128, 144 C. C. A. 418; but compare Computing Co. v. Standard Co. (C. C. A. 6) 195 Fed. 508, 115 C. C. A. 418. It need only be remembered in this connection that, where the question is not one of full anticipation, but is whether the advance shown by the later over the earlier device is of an inventive character, the failure of the earlier to get recognition in the trade may be persuasive evidence that an apparently slight advance was more important than it seems.

[7-9] The evidence clearly shows that the Bedell device was completely operative. The fact that it was not commercially adopted is not inconsistent with this conclusion, and a statement of the situation makes this clear. It charged the skelp plates, during a two-hour trial, and with fair success; but these furnaces, or some of them,

---

[2] "1. The combination of a furnace, a charging-table at one end thereof, and a magnet thereon having surface travel toward the furnace; the said surface being arranged to be engaged by linear magnetic materials and to transfer the same to the furnace."

were not built for charging from the wheel elevation, and, in order to work as rapidly as desired, the furnaces would have to be somewhat changed. The manufacture of the complete device would be expensive. Bedell had not sufficient means, and the furnace owner, seemingly, did not care to engage in the manufacturing business. At the time of this trial, and in spite of its imperfect co-operation with these furnaces, it pointed out a great saving in labor. The most that can be said against Bedell is that he was not sufficiently satisfied that the device would be accepted and installed by furnace owners and that its manufacture would be profitable, so that he felt impelled to engage in efforts to interest the necessary capital to manufacture and push his invention. This has no substantial tendency to show that he did not make an invention. If Bedell had not applied for a patent, but had dropped the matter after the experimental furnace use, we would have the question of abandoned experiment; but, if there were any doubt whether this use demonstrated a completed invention, it would be removed by the application for patent, which is a constructive reduction to practice. Automatic Weighing Mach. Co. v. Pneumatic Co. (C. C. A. 1) 166 Fed. 288, 92 C. C. A. 206.

[10] It follows that we consider the first Coey patent invalid and the Bedell patent valid, and we come to the question of infringement of the latter. The only variation arises as to the element "plate elevating mechanism." The defendant in the cross-suit, who uses the machine shown in the Coey patent, has substituted the above-described Coey plan for feeding the plate, and this is the question of equivalency which is presented. Undoubtedly, there is equivalency, in a broad sense. Each results in appropriate feeding; but there is striking mechanical and operating difference, and the limitation implied by the call for "elevating mechanism" must lead to the conclusion of noninfringement, if the limitation is given full effect. In D'Arcy v. Marshall Co., 259 Fed. 236, 170 C. C. A. 304, we reviewed and considered several cases bearing on the conflicts in application between the rule of limitation and the rule of equivalency, and held, in exemplification of the controlling principles, that where the limiting element named in the claim had a distinct and useful function regarded by the inventor as important, and was not named merely as indicating the working field of the invention, the limitation could not be expanded to cover a substituted part which did not have that function, even if the limitation were wholly unnecessary.

[11] In determining the breadth of equivalency which Bedell should have, he is entitled to such benefit as comes from observing that the great merit of his invention lay in the magnetic charging wheel, and that it has turned out to be relatively unimportant how the skelp strip is brought to the wheel, and he is entitled, also, to such liberality of construction as comes from the fact that the invention has proved important and has gone into general use. Since the magnetic charging wheel was Bedell's invention, and not Coey's, and since this is the dominating feature of the device, it cannot be controlling that it was Coey, and not Bedell, who brought the commercial machines upon the market; the general commercial acceptance testifies no less strong-

ly for that reason to the merit of this broader invention; but while the inventor of a very substantial advance should receive as broad a measure of protection as the language of his grant justifies, it is equally true that the defendant who has manufactured or used a device in reliance upon an express limitation in the patent, voluntarily inserted or accepted by the patentee, should be protected in his investment. White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303.

[12] The Bedell specification leaves no doubt that it was part of his plan to avoid any manual handling of the skelp after it had been placed on the working table. He appreciated that feeding manually to the charging wheel would be dangerous on account of the force with which the strip would be seized and jerked away; he therefore contemplated that the strip should be touched only by mechanism; and the use of the word "mechanism" fairly implies, in this case, that it has operative connection with the rest of the device. The defendant has no feeding mechanism in any such sense, but the feeding is manual. The inclined slide and the trough are aids to the manual handling of the skelp, but they are only aids. They do nothing of themselves, in feeding. A manual handling is not the equivalent of a claimed mechanism. Brown v. Davis, 116 U. S. 237, 249, 6 Sup. Ct. 379, 29 L. Ed. 659. We do not place dependence upon the fact that the skelp comes from the carrying table down to the upper side of the wheel, instead of coming up to the lower side of the wheel; that is a mere reversal of parts or position, which well might not avoid equivalency; but, if the specified element in the claim were merely "plate-feeding mechanism," we would be forced to conclude that the element was wholly absent from the defendant's device. In view of Bedell's unquestioned priority and the merit of his invention, it now seems unfortunate that he voluntarily and unnecessarily limited it to a mechanical feed; but the effect of this limitation cannot be escaped.

The decree below, dismissing the bill upon the Bedell patent, must be affirmed (No. 3387); the decree upon the Coey patents (No. 3386) should be reversed, with instructions that the bill must ultimately be dismissed as to the first patent, and that the case should proceed to decree as to the second patent.