466

## MARKS et al. v. LATHROP et al.

Circuit Court of Appeals, Sixth Circuit.
July 1, 1929.

No. 5063.

W. B. Morton, of New York City (Murray & Zugelter, of Cincinnati, Ohio, and M. D. Jackson, of New York City, on the brief), for appellants.

Marston Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, on the brief), for appellees.

Before DENISON, MACK, and HICKS, Circuit Judges.

MACK, Circuit Judge. While Marks' patent reissue No. 16,243 of January 5, 1926, was deemed by the trial judge to be invalid as to the reissuance, the decree dismissed the bill because claims 3 and 4 in suit were found not to have been infringed. On the appeal, we find it unnecessary to consider the interesting question bearing on the validity of the reissue, because in our judgment the decree must be affirmed on the ground of noninfringement.

As stated by appellant, "the Marks invention relates to roof structures of the poured-in-place, monolithic type, the distinguishing feature of the invention being the use, together with other elements, of ordinary plaster board and supporting members therefor, forming permanent parts of the finished structure, said members serving to support the lateral edges of the plaster board, and also to maintain the adjacent end edges of the boards in alignment during the pouring operation. This invention makes it possible to use throughout standard materials of construction, and this without employing any auxiliary construction equipment whatever, such as the temporary forms of supports previously employed in the art."

Theretofore the temporary wooden forms to support the plastic mass were used in the "poured-in-place" roof; this naturally involved greater expense for the material and labor in erecting these forms; furthermore, the lower exposed surface is unsightly. An-

other type of gypsum roof was the "precast slab" construction. This is more expensive, the roof is not monolithic, and the reinforcing problem difficult.

In Marks' roof, pieces of plastic board are set in or on a metal framework so as to form a base. Over this base reinforcing wire mesh is laid; a plastic mass is then poured over the whole, embedding the framework above the base and bonding with the plastic board, which becomes the lower surface of the roof. Marks, however, was far from a pioneer in this construction.

The claims in suit, 3 and 4 of the reissue patent, which did not appear in the original patent No. 1398079 granted November 22, 1921, on application filed August 31, 1920, and surrendered for reissue on October 15, 1925, read as follows:

"3. A roof of the character described, comprising purlins, metal angle members supported on the purlins and presenting oppositely projecting flanges, plaster boards supported on said flanges, metal reinforcing fabric supported over and in spaced relation to said plaster boards and forming a continuous reinforcement for the length of said angle members, means for holding adjacent edges of said plaster boards substantially in alignment with each other and a cementitious body molded onto the plaster boards and bonding therewith and of a depth materially greater than said angle members, thereby forming a monolithic roof slab including the plaster boards, cementitious body, metal reinforcement, and the means for holding adjacent edges of said boards in alignment.

"4. A roof of the character described, comprising purlins, metal angle members supported on the purlins and presenting oppositely projecting flanges, plaster boards supported on said flanges, metal reinforcing fabric supported over and in spaced relation to said plaster boards and forming a continuous reinforcement for the length of said angle members, transverse supporting means for holding adjacent edges of said plaster boards substantially in alignment with each other, and a cementitious body molded onto the plaster boards and bonding therewith and of a depth materially greater than said angle members, thereby forming a monolithic roof slab including the plaster board, cementitious body, metal reinforcement and said transverse supporting means."

The metal reinforcing fabric in each of these claims is to be continuous "for the length of said angle members," that is, specifically in any event lengthwise of the angle bars, whether or not it be also across them,

and thus extend continuously in both directions.

The specifications recite:

"Preferably this slab will be reinforced by embedding in the cementitious material suitable metallic reinforcement 7, preferably a metallic mesh, such as metallic lath, wire mesh, or the like. This metallic reinforcement may be in the form of sheets extending across, and resting upon the upper edges of the angle bars 6 and being supported by the latter and thereby properly spaced from the plaster boards 4 the upward projection of the angle bars 6 preferably being somewhat greater than the thickness of the plaster boards, but terminating below the center of the upwardly projecting legs of the T bars, so that the metal reinforcement will be embedded close to the lower face of the slab. This metallic mesh will be either one continuous strip extending from the eaves to the ridge of the roof, or may be composed of a number of pieces, the ends of which are overlapped so that when embedded in the cementitious material it has the same reinforcing effect as though a continuous strip of material were used; also if desired, the edge portions of the metallic reinforcement may be bent upwardly and made to overlap the upper edges of the T bars 3, as shown at 8, Fig. 3, so as to also secure a continuous, additional transverse tie; or the strips of reinforcement may run across the T bars 3, and bend down between the T bars, with their edges overlapping to give in effect a continuous material, from eave to ridge and also transversely of the roof."

Clearly patentee contemplated a reinforcing material laid in either of two ways, lengthwise of the base or by overlapping or otherwise, both length and crosswise; equally clearly he did not intend to cover a reinforcing material that would extend only across the bars and not be continuous lengthwise. Such, however, is defendant's metallic mesh used in the alleged infringing roof structures.

In Marks' roof plan, the angle bars are not, and are not designed to be, load-supporting members; the large purlins support the load; they extend crosswise of the angle bars; the reinforcing mesh, to extend across, and thus to span the purlins to which they transmit the load, necessarily run lengthwise of the angle bars. Of course, if the reinforcing material is laid crosswise, but the adjoining strips overlapped, so as to make, in effect, not a series of cross strips, but a continuous material in both directions, infringement would be clear. In that event, the overlapping would create the continuity of the material lengthwise, even though the strips are laid crosswise.

Defendant's strips, however, did not overlap; they were spaced apart. In each strip the heavy wires which ran only crosswise and not lengthwise of the bars were bound together by light cross wires; these latter, however, not only did not run continuously lengthwise of the bars because of the spacing apart of the strips, but in themselves effectuated no real reinforcement. In defendant's structure rails were used for Marks' angle bars; these rails were both spaced closely enough and were heavy enough to sustain the load and transmit it to the purlins, as they, unlike Marks' angle bars, were designed to do.

This difference is not accidental; Marks' limitation was by amendment to avoid references. His aim was to suspend the poured slab by means of reinforcement from purlin to purlin, without reliance upon the light, cheap angle members after the slab was set. In defendant's structure, the purlins support the rails, the heavy rails support the poured slab and initially take the load, and then transmit it to the purlins.

In these circumstances, whatever the validity of the reissued patent, infringement cannot be found. See D'Arcy v. Marshall (C. C. A.) 259 F. 236.

Decree affirmed.