**MANTZ et al. v. KERSTING.**

**No. 59–Y Civil.**

District Court, S. D. California, C. D.

Oct. 14, 1939.

Joseph F. Westall, of Los Angeles, Cal., for plaintiffs.

Harris, Kiech, Foster & Harris by Ward D. Foster and Ford Harris, Jr., of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

Plaintiffs charge infringement by the defendants of Mantz Letters Patent No. 1,898,584, issued February 21, 1933, relating to a spring sash balance, and Mantz Letters Patent No. 2,128,007, issued August 23, 1938, relating to a combination

hook and glider, to be used with a spring sash balance.

■ The art is old. Neither invention is primary. They must, therefore, be limited to the very structure described. Bridge v. Excelsior Co., 1881, 105 U.S. 618, 26 L.Ed. 1190; Boyd v. Janesville Hay-Tool Co., 1895, 158 U.S. 260, 267, 15 S.Ct. 837, 39 L.Ed. 973; Kokomo Fence Machine Company v. Kitselman, 1903, 189 U.S. 8, 23 S.Ct. 521, 47 L.Ed. 689; S. H. Brinton Co. et al. v. Mishcon, 1937, 2d Cir., 93 F. 2d 445, 449; Nye & Nissen v. Kasser Egg Process Co., 1938, 9 Cir., 96 F.2d 420, 423; and see my recent opinion in Delaney Patents Corp. v. Johns-Manville et al., D.C., 29 F.Supp. 431 decided on September 28, 1939.

The two claims of Letters Patent No. 1,898,584, of which infringement is charged, read:

"(1) In a spring sash balance, a housing, a rotatably adjustable axle mounted within said housing, a drum mounted on said axle, a spiral spring arranged within said drum and having its ends connected respectively to said drum and said axle and a circumferential bead projecting inwardly from the rear wall of the housing and surrounding the periphery of said drum for preventing the cable that winds on said drum from passing off the inner end of said drum.

"(2) In a spring sash balance, a housing, a rotatably adjustable axle mounted for operation therein, a drum mounted for operation on said axle, a spring arranged within said drum and having its ends connected respectively to said drum and axle, a flexible member connected to and adapted to wind onto said drum, the outer end of the periphery of said drum being provided with a circumferentially inclined face and a circumferential bead formed on the inner wall of the housing and surrounding the inner edge of the periphery of said drum for preventing the flexible member that winds onto said drum from riding off the inner end thereof."

It is clear that the elements of the combination are these: (1) A housing; (2) a rotatably adjustable axle; (3) a drum mounted on the axle; (4) a spring arranged within the drum with its end connected to the drum and axle; (5) a flexible member connected to and adapted to wind onto the drum; (6) the outer end of the periphery of the drum having a circum-

ferentially inclined face; and (7) a circumferential bead formed on the inner wall of the housing, so as to prevent the flexible member that winds onto the drum from riding off.

The flexible member used in the structure, as manufactured, is a piano wire cable.

Sash balances have been in use for many years. The significant features of the Mantz sash balance can be best illustrated by a comparison with two other Mantz balances of which the patent in suit claims to be an improvement.

The patent in suit refers to them as United States Letters Patent 1,669,990, issued on May 15, 1928, and co-pending application filed by Mantz on July 25, 1928, Serial Number 295184.

The device disclosed by Mantz patent 1,669,990 was of the flat type, the face plate of which 10 is shown in Figure 1. The face plate supports a fixed pin 13 extending from it backwardly. The mechanism is affixed on pin 13 to the front plate. The pin supports the cable-carrying drums or spools 17 and 21. The first spool 17 is fixed to a rotatable sleeve 16 and on that sleeve is rotatably mounted a housing 20 containing spiral spring 27 fixed as shown in Figure 3 to the rotatable sleeve 16 at one end. The other end of the spring is affixed outside the housing 20. The cables from each of the drums 17 and 21 are spaced by discs 19 and extend down through openings 29 in the face plate, so that the cable connects through a hook 30 to one sash. This is done also with the second cable to the lower sash. Pin 13 which does not rotate is parallel to the plane of the window sash. At the rear end of the pin 13 is affixed a plate 25 held in position by a screw 26 in order to hold the various parts in place.

When the balances are installed, the springs are partially wound to put a certain tension in the spring, in order to balance the sash. The drums or spools 17 and 19 are adapted to support the cables without permitting them to run out. The cables are wound vertically, one above the other.

The specifications clearly contemplate the possibility of utilizing one spring for each drum, rather than a single spring which would operate two drums. One of the claimed advantages of the structure is that, being of the flat, level type, it made

708

it unnecessary to cut away a portion of the wall behind the jamb to accommodate it.

May 15, 1928. A. F. MANTZ 1,669,990
SPRING SASH BALANCE
Filed June 29. 1927

INVENTOR;
a. F. Mantz.
By ............ atty.

the front plate 12 are fixed frictional spring fingers 21. There are shown in Figure 1 eight of these frictional fingers which are for the purpose not of adjusting the tension of the spiral spring, but of giving a frictional resistance. The tension is put into the springs by manually rotating these drums and then inserting a pin through an orifice 23 and an orifice 24 in the front and rear plates of this shallow housing, so that there will be a certain tension stored in these springs at the time that the balance is installed.

Dec. 15, 1931. A. F. MANTZ 1,836,080
DUPLEX SPRING-SASH BALANCE
Filed July 25, 1928

INVENTOR
A. F. MANTZ.
.......... ATTORNEY.

In his specifications to Letters Patent 1,836,080, which is the patent issued on application No. 295,184 referred to in the patent in suit, Mantz claims the new structure as an improvement on the prior one.

The objects sought to be accomplished are: (1) A duplex spring sash balance which may be easily installed and removed in order to aid adjustment and repairs; (2) to provide a frictional resistance between the cable carrying drums or spools and the housing which results in a minimum tension in the spring, so that the sash will remain stationary in all positions. In a shallow housing 10, he has two rotatable axles 14 placed substantially vertically above each other. Outside of these axles, are fixed cable-carrying drums 15, which, like those in patent 1,669,990, receive the cables coiled in a vertical position. These drums are firmly fixed to the rotatable axles 14 and are separated from a spiral spring 22 by the front case of the housing 12. These springs are not in any housing which is rotatable on the axle 14, but one end of the spring is fixed to each axle. In between the cable-carrying drums 15 and

In the patent in suit, Mantz, as his specifications show, sought to improve and simplify the construction of the sash balances in his prior patents and other "similar forms of spring sash balances", to provide a sash balance having two separate drums on which the sash supporting the cables are wound, each drum inclosing a spiral spring. The cables are carried on the periphery of the drums in a single flat winding. To insure that the cables wind evenly on the drums without piling up or winding in two layers, means are provided consisting of circumferential flange 22 having an inclined face which is stated to cause the cables to wind evenly onto the drum. Aiding this achievement is a

circumferential bead 24 pressed into the rear wall of the housing.

The regulation of the tension on the spiral springs is achieved by the rotatable axles 17 and one end of the spiral spring 25 attached to them, which may be rotated by inserting a screwdriver in a slot 30 and pressing in on a ratchet 28 which is spring-pressed by the spring 31 and rotating the axle 17 in either direction to wind or unwind the spring and thus regulate the tension as is desired.

Feb. 21, 1933.

A. F. MANTZ

1,898,584

SPRING SASH BALANCE

Filed Nov. 12, 1929

The accused device has a housing, an axle mounted therein with a drum mounted on the axle, and a spiral spring within the drum having its ends connected to the drum and the axle, the drum having thereon one flange, and there being another spring,—frictionally resisting the rotation of the drum. The axle is firmly riveted to the cover and housing. A cable is wound on the drum. The leaf spring between the spiral spring and the drum resists the rotation of the drum by urging the coils of the spiral spring into frictional engagement with the housing.

In this device, several of the elements of the patented device are missing. It does not contain the rotatably adjustable axle mounted within a housing. It has an axle which is stationary, to which the spiral spring is attached. The difference in result is quite important. By means of the rotatably adjustable axle, it is possible, in the plaintiffs' device, to adjust, after installation, the tension of the spring by means of a disc which, as the specifications say, is: "provided on its edge with a series of radially disposed teeth 28, thereby forming a ratchet wheel and said disc is provided with a pair of arcuate openings 29 for the reception of the lugs 26. Formed in the center of disc 26 between the openings 29, is a small opening or slot 30, that is adapted to receive the point of a screw driver or like tool."

In the accused device, the exact tension of the springs is adjusted before assembly *in a shop operation* and not in the operation of the structure. Otherwise put, in the patented device, adjustment is achieved *in the device itself*. In the accused device, *the adjustment is a factory process*.

After the installation is completed, and the housing is riveted on, the spring cannot be adjusted either by rotating the axle or in any other manner.

■■ Counsel say that the ratchet wheel and its function may be disregarded, as they are not in Claims 1 and 2, sued on. But without it, the structure is incomplete. A patentee may patent part of a structure in a combination, or claim it separately. See: Seymour v. Osborne, 1870, 11 Wall. 516, 541, 20 L.Ed. 33; Fay v. Cordesman, 1883, 109 U.S. 408, 420, 421, 3 S.Ct. 236, 27 L.Ed. 979; Silsby v. Foote, 1852, 14 How. 218, 226, 14 L.Ed. 394; Walker on Patents, 6th ed., Secs. 162, 219. But he cannot, when confronted with a combination which embodies some only of the elements in his device, and which, for that reason, *is also invention,* disregard the omitted elements. And when he claims separately less than the whole structure, the claim must "itself sufficiently define invention". See Altoona Publix Theatres v. Tri-Ergon Corp., 1935, 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005; Gage v. Herring, 1883, 107 U.S. 640, 648, 2 S.Ct. 819, 27 L.Ed. 601. Without the ratchet wheel, the rotatably adjustable axle, which is in all claims, and is stressed as an important part of the combination, becomes inoperative. More, there are no means left for adjusting the tension of the spring.

■ To constitute infringement, there must be substantial identity of result,

means and operation. Electric Railroad Signal Co. v. Hall Signal Co., 1885, 114 U.S. 87, 96, 5 S.Ct. 1069, 29 L.Ed. 96; Cimiotti Unhairing Co. v. American Fur Refining Co., 1905, 198 U.S. 399, 25 S.Ct. 697, 49 L.Ed. 1100; Hyman v. Woolworth Co., 1928, 8 Cir., 28 F.2d 833, 838; Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 41, 42, 50 S.Ct. 9, 74 L.Ed. 147. This, of course, is subject to the general rule that infringement cannot be avoided by substituting an equivalent performing substantially the same function. Bates v. Coe, 1878, 98 U.S. 31, 32, 25 L.Ed. 68; Union Paper Bag Machine Co. v. Murphy, 1877, 97 U.S. 120, 24 L.Ed. 935; Cimiotti Unhairing Co. v. American Fur Refining Co., supra; Sanitary Refrigerator Co. v. Winters, supra; Samuel M. Langston Co. v. Continental Container Corp., 1936, 2 Cir., 80 F.2d 847.

A manual operation is not the equivalent of a mechanical means for performing it or of automatic action. As said in Brown v. Davis, 1885, 116 U.S. 237, 249, 6 S.Ct. 379, 386, 29 L.Ed. 659: "But the lever, or its equivalent, *as a mechanical instrument,* is made an essential element in claim 2; and dispensing with the lever, and *using instead the human hand,* is not the use of an equivalent, although in the plaintiffs' machine the hand is applied to work the lever. Water Meter Co. v. Desper, 101 U.S. 332, 337, [25 L.Ed. 1024]; Gage v. Herring, 107 U.S. 640, 648, 2 S.Ct. 819 [27 L.Ed. 601]; Fay v. Cordesman, 109 U.S. 408, 420, 421, 3 S.Ct. 236 [27 L.Ed. 979]; Sargent v. Hall Safe and Lock Co., 114 U.S. 63, 86, 5 S.Ct. 1021 [29 L.Ed. 67]." (Italics added)

See also: Gage v. Herring, 1882, 107 U.S. 640, 648, 2 S.Ct. 819, 27 L.Ed. 601; Republic Iron & Steel Co. v. Youngstown Sheet & Tube Co., 1921, 6 Cir., 272 F. 386, 392; American Chocolate Machinery Co. v. Helmstetter, 1905, 2 Cir., 142 F. 978; Michigan Carton Co. v. Sutherland Paper Co., 1928, 6 Cir., 29 F.2d 179; King Philip Mills v. Kip-Armstrong Co., 1 Cir., 1904, 132 F. 975, 976; American Roll Gold Leaf Co. et al. v. W. H. Coe Mfg. Co. et al., 1914, 1 Cir., 212 F. 720, 724; Dudlo Mfg. Co. v. Varley Duplex Magnet Co., 1918, 7 Cir., 253 F. 745, 750; Aleograph Co. v. Western Electric Co., Inc., 1934, 2 Cir., 68 F.2d 853, 856.

A step during the process of manufacture is a part of it. The result cannot be regarded as the equivalent of the element of a claim. See, The Risdon Iron & Locomotive Works v. Medart, 1895, 158 U.S. 68, 84, 15 S.Ct. 745, 39 L.Ed. 899; Buono v. Yankee Maid Dress Corp., 1935, 2 Cir., 77 F.2d 274, 279. Here, in the installation of the accused device, the tension adjustment is achieved by a machine shop or factory operation prior to the placing of the spring onto the drum, i. e., *before assembly.* Thereafter, no adjustment can be made. In the patented device, the adjustment of tension is achieved, after the device is assembled, by means of the rotatable axle and the disc. We thus have, in the patented device, a mechanical means for securing proper tension. In the accused device, we have no such means. Instead, *we have a manual handling before assembly.* The one is not the equivalent of the other. As said in Republic Iron & Steel Co. v. Youngstown Sheet & Tube Co., supra, 272 F. at page 392: *"A manual handling is not the equivalent of a claimed mechanism."* So, whether we view the problem through the general principle that no infringement exists unless there be identity of result, means and operation or apply the doctrine of equivalents, the result is the same: the omission of the rotatably adjustable axle which performs an important function in the patented device avoids infringement. See: Fay v. Cordesman, 1883, 109 U.S. 408, 3 S.Ct. 236, 27 L.Ed. 979; McClain v. Ortmayer, 1891, 141 U.S. 419, 425, 12 S.Ct. 76, 35 L.Ed. 800; Oliver United Filters, Inc. v. Eimco Corp., 1937, 10 Cir., 91 F.2d 345, 350; Wichita Visible Gasoline Pump Co. et al. v. Clear Vision Pump Co., 1927, 8 Cir., 19 F.2d 435, 437.

However, two other elements are absent in the accused device—the circumferentially inclined face (6), and the circumferential bead (7). These perform the definite function of keeping the cable from passing off the inner end of the drum. The flange or flare on the drum and the indentation on the back of the casing in the accused device do not perform the same function. To particularize: The triangular indents in the housing of the accused device are not beads. They do not surround the drums, to prevent the cable from passing off their rearward edge, or wedging between them and the housing. In operation, the cables do not touch these indents. The flare or flange on the inner end of the drum of the accused device does not prevent the cable which winds on the drum from passing off

its inner end and wedging between it and the housing. This because it is not high enough for the purpose. The end of the cable is attached to the drum some distance in front of this flare and the cable does not wind on the drum beyond its point of attachment and does not contact the flare.

From the statements of the inventor at the trial and in his deposition, and from his counsel's opening statement, one would gather that they consider the essence of the invention to lie in its being a duplex spring sash balance of a flat type—i. e., a balance in which the axis of the axle upon which the pulleys are mounted is parallel to the plane of the window, adapted to be connected to both sashes. This, they claim, was pioneering in the art, which supplanted the edge, Pullman or crescent type of single balance which, because it needed bolstering, either required additional construction or a weakening of the wall back of the sash through the recesses cut to house it.

But these features were already disclosed by Mantz No. 1,669,990 and Mantz No. 1,836,080. And the claims in suit are silent on the subject. They neither claim as invention the combination of two sash balances, nor the flush type.

 More, the file wrapper shows that the original claims for these features were rejected by the patent office as an aggregation and the present more limited claims allowed. The first five claims of the application were first rejected on April 30, 1930, chiefly upon the ground that "there was no patentable cooperation between the two rollers" and also "as being drawn to an aggregation of unrelated elements". They were again rejected in their amended form on May 7, 1931, when they read:

"1. In a duplex spring sash balance, a shallow box-like housing adapted to be positioned in an opening in a window jamb, the front and rear faces of said housing lying substantially flush with the outer and inner faces of said jamb, a pair of independently mounted rotatably adjustable axles arranged one above the other within said housing, independently operating cables carrying drums mounted on said axles and a spiral spring arranged within each drum and having its ends connected respectively to the corresponding drum and axle."

"2. In a duplex spring sash balance, a shallow box-like housing adapted to be positioned in an opening in a window jamb, the front and rear faces of said housing lying substantially flush with the outer and inner faces of said jamb, as well as mounted for rotative adjustment in said housing, a pair of drums mounted for independent rotary movement upon said axles, flexible members connected to and adapted to wind onto said drums, which flexible members are adapted to be connected to window sash, and spiral springs arranged within said drums with their outer ends connected to said drums and their inner ends connected to said axles."

"3. In a duplex spring sash balance, a shallow box-like housing adapted to be positioned in a window jamb with the front and rear faces of said housing lying substantially flush with the outer and inner faces of said jamb, axles journalled in said housing and arranged one directly above the other, a drum mounted for rotation upon each axle, flexible members connected to said drums and adapted to wind thereonto, which flexible members are adapted to be connected to window sash and spiral springs arranged within said drums with their outer ends connected to said drums and their inner ends connected to said axles."

"4. In a duplex spring sash balance, a shallow box-like housing adapted to be positioned in a window jamb with its front and rear faces lying substantially flush with the outer and inner faces of said jamb, a removable face plate secured to said housing, axles journalled in said housing and face plate which axles are disposed one directly above the other, drums journalled on said axles, flexible members connected to said drums and adapted to wind thereonto, which flexible members are adapted to be connected to a window sash and spiral springs arranged within said drums and having their outer ends connected to said drums and their inner ends connected to said axles."

"5. In a duplex spring sash balance, a shallow box-like housing adapted to be positioned in a window jamb with its front and rear faces lying substantially flush with the outer and inner faces of said jamb, a removable face plate secured to said housing, axles journalled in said housing and face plate which axles are disposed one directly above the other, drums journalled on said axles, flexible members connected to said drums and adapted to wind thereon, which flexible members are adapt-

ed to be connected to a window sash, spiral springs arranged within said drums and having their outer ends connected to said drums and their inner ends connected to said axles and a ratchet and detent connection between each axle and face plate for regulating the tension of the spiral springs."

On October 8, 1931, Mantz acquiesced in the cancellation of these five claims. He sought to substitute for them other claims (Claims 14 to 17), which again stressed the duplex feature and the shallow box-like housing. On February 9, 1932, these were also rejected as unpatentable. The Examiner wrote: "To mount two separate drums, one above the other as shown by either Harp or Cumpaugh, instead of the single drum arrangement in Mantz would not involve invention. Doing this obviously would make the balance device of Mantz thin enough to come within the limits of the jamb." Under date of August 6, 1932, Mantz cancelled the rejected claims and requested the allowance of the claims as they now stand.

"Where an inventor, seeking a broad claim which is rejected, in which rejection he acquiesces, substitutes therefor a narrower claim, he cannot be heard to insist that the construction of the claim allowed shall cover that which has been previously rejected. Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U.S. 38–40, 14 S.Ct. 28, 37 L.Ed. 989, 990, and cases there cited." Computing Scale Co. v. Automatic Scale Co., 1907, 204 U.S. 609, 617, 27 S.Ct. 307, 310, 51 L.Ed. 645.

And see: I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335; Smith v. Magic City Kennel Club, 1931, 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707; Weber Electric Co. v. Freeman Electric Co., 1921, 256 U.S. 668, 41 S.Ct. 600, 65 L.Ed. 1162; Hauser v. Simplex Window Co., 1926, 9 Cir., 10 F.2d 457. It is true that the inventor in his specifications speaks of a "duplex spring sash balance". But the measure of the invention is not the specifications, but the claims.

"A claim is not 'like a nose of wax which may be turned and twisted in any direction', so as to make it include something more than, or something different from, what its words express, by merely referring to the specification. The claims are the creature of statute in which the

inventor is required to particularly point out and distinctly claim his invention." Walker on Patents, 6th Ed., Section 161, p. 191.

And see: Continental Paper Bag Co. v. Eastern Paper Bag Co., 1908, 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122; Motion Picture Patents Co. v. Universal Film Manufacturing Co., 1917, 243 U.S. 502, 510, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959; Smith v. Snow, 1934, 294 U.S. 1, 11, 55 S.Ct. 279, 79 L.Ed. 721; Altoona Publix Theatres v. Tri-Ergon Corporation, 1935, 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005. By his specifications, he may exemplify his claims or limit them. *He cannot enlarge them.* Yale Lock Mfg. Co. v. Greenleaf, 1886, 117 U.S. 554, 6 S.Ct. 846, 29 L.Ed. 952; Snow v. Lake Shore & Ry. Co., 1887, 121 U.S. 617, 7 S.Ct. 1343, 30 L.Ed. 1004; Howe Machine Co. v. National Needle Co., 1890, 134 U.S. 388, 394, 10 S.Ct. 570, 33 L.Ed. 963; McClain v. Ortmayer, 1891, 141 U.S. 419, 424, 12 S.Ct. 76, 35 L.Ed. 800; Continental Paper Bag Co. v. Eastern Paper Bag Co., supra; Rip Van Winkle Wall Bed Co. v. Murphy Wall Bed Co., 1924, 9 Cir., 1 F.2d 673, 679; Walker on Patents, 6th Ed. Sec. 219.

In the light of what precedes, I find that the claims in suit as herein interpreted are valid. But they are not infringed by the accused devices.

The issues as to the hook and glider patent, Mantz No. 2,128,007, can be disposed of briefly.

Counsel for plaintiffs concedes that it is a "humble" invention. Humility or simplicity does not, necessarily, mean lack of invention. See my opinion in Hookless Fastener v. Greenberg 1937, D.C., 18 F.Supp. 296. Its object is to supply a structure which will act as an anti-rattling device and support for a sash in a window frame. Claim 1, the infringement of which plaintiffs charge, reads: "1. A cable securing hook and glider comprising a substantially L-shaped member, a prong projecting upwardly from the free end of the horizontal leg of said member, a resilient plate secured to and depending from the upper portion of the vertical leg of said L-shaped member, and said hook and glider being provided with an aperture for the reception of a flexible member that connects said hook and glider to a sash balance."

In Figure 1, it is shown in perspective. It calls for a one-piece L-shaped member in which the vertical leg has an extension adapted to be bent over and form a resilient spring 13. The horizontal leg is adapted to go on the bottom part of the sash and is formed with a lip 11 or prong which may be driven into the lower part of the sash. The bent-over portion, comprising the joint, the junction of the resilient spring 13 with the vertical leg 10, is provided with an aperture 14 adapted to receive the cable C which goes to a spring balance. The cable passes downwardly through the opening 14 between the resilient spring 13 and the vertical leg 10, and is then wound around the bottom horizontal leg to come out through an orifice 12 and be fastened to the sash.

Aug. 23, 1938. A. F. MANTZ 2,128,007
CABLE SECURING HOOK AND GLIDER
Original Filed April 1, 1936

*INVENTOR,*
*Aloysius F. Mantz*
*By _____*
*ATTY.*

The accused device consists of a hook member having a vertical leg, and a resilient member which is clamped on the back of it. The horizontal leg of the device, Defendant's Exhibit F, has two prongs on it and also an orifice. The horizontal leg of the device, Defendant's Exhibit E, has no prong on it. In both of defendant's devices, a cable on the sash is connected to a swivel at the top portion of the vertical leg. It does not pass through any aperture between the vertical leg and the resilient member. It is swiveled at the top, and is not fastened by the horizontal leg by passing downward and being clamped through a hole. The construction shows a completed device, in which the cable *is clamped* through a swivel, and there is a hole in the horizontal leg. Claim 1 is limited to a one-piece construction having an opening at the upper end of the L-shaped hook and the upper end of the glider, which receives the flexible member or cable through which the flexible member passes downwardly between the hook and glider, and having a prong projecting upwardly from the free end of the horizontal leg of the L-shaped member. The accused devices do not have an aperture for the reception of a flexible member and Defendant's Exhibit E does not have a prong projecting upwardly from the free end of the horizontal leg of the L-shaped member. The only real similarity between the two devices is the fact that resiliency is achieved in both. In the patented device, as described in the patent, this is done by bending over the vertical end of the L-shaped member. In the accused devices, there is a resilient, separate portion riveted to the vertical leg of the hook.

I do not think this is infringement.

In fact, I think that the device of the defendants is a distinct improvement. The attachment of the cable underneath the horizontal leg through the hole might, *by the pull of the cable,* result in dislocating the hook. In the accused device, the stress would be on the vertical end of the L-shaped member.

I do not think invention resides in resiliency. Limited to resiliency, the invention would not be new and would be in the prior art. See Appleby No. 1,760,-227, issued May 27, 1930.

[14] I find that Claim 1 of Mantz Letters Patent No. 2,128,007, as herein limited, is valid but not infringed.

Findings and judgment to be prepared by the defendants under Local Rule 8.